UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

GEOFFREY REESE, )
            )
    Plaintiff )
v. ) No. 1:18-cv-00421-JDL
            )
RANDALL LIBERTY, et al., )
            )
    Defendants )

*MEMORANDUM DECISION AND ORDER ON DEFENDANTS'*
*MOTION TO RETAIN CONFIDENTIALITY DESIGNATIONS*

In this civil rights case arising from the alleged use of excessive force against the plaintiff, a prisoner at Maine State Prison ("Prison"), when corrections officers sprayed him with a chemical agent during a so-called "cell extraction" in May 2016, *see* First Amended Complaint (ECF No. 32) ¶¶ 1,14-16, the defendants seek to retain "attorneys' eyes only" designations as to three categories of documents and related testimony, *see generally* Defendants' Motion To Retain Confidentiality Designations ("Motion") (ECF No. 28). I conclude that the defendants have shown the requisite good cause to retain that designation based on prison safety and security concerns and, accordingly, grant the Motion.

**I. Applicable Legal Standards**

The parties' confidentiality order provides, in relevant part:

> [The] defendants may designate certain Department of Corrections policies, and other information as "Confidential – Not to be disclosed to Plaintiff." When such documents and information are so designated, plaintiff's counsel may not disclose the documents to plaintiff without a further order and specific permission of the Court and upon such terms as the Court shall set.

Consent Confidentiality Order ("Confidentiality Order") (ECF No. 16) ¶ 6(b)(2). The Confidentiality Order provides that a party may object to the designation of a document as

confidential, following which the objecting party and the designating party must meet and confer to attempt to resolve the objection in good faith. *See id*. ¶ 9(a)-(b). Failing such resolution, the designating party may file a motion to retain its designation, with respect to which it bears "the burden to show good cause" for the designation's retention. *Id*. ¶ 9(c); *see also* Fed. R. Civ. P. 26(c)(1) (court may issue protective order on showing of "good cause").

"A finding of good cause must be based on a particular factual demonstration of potential harm, not on conclusory statements." *Anderson v. Cryovac, Inc.*, 805 F.2d 1, 7 (1st Cir. 1986). The "good cause" standard "is a flexible one that requires an individualized balancing of the many interests that may be present in a particular case." *Gill v. Gulfstream Park Racing Ass'n, Inc.*, 399 F.3d 391, 402 (1st Cir. 2005) (citation and internal quotation marks omitted).

## II. Background

Pursuant to the Confidentiality Order, the plaintiff objected to the defendants' designation of four categories of documents, as well as portions of deposition transcripts discussing those documents, as for attorneys' eyes only. *See* Plaintiff's Objections to Defendants' Confidentiality Order Designations, Exh. A (ECF No. 28-1) to Motion. The parties conferred and resolved their dispute over one category of documents, leaving the following three categories (and relevant portions of deposition transcripts) at issue: (i) 2016 Department of Corrections ("DOC") policies governing the use of force, including the use of chemical agents and cell extractions, (ii) 2016 DOC training materials on cell extraction procedures, and (iii) the 2016 Instructor Manual for Sabre OC Aerosol Projectors ("2016 Sabre Manual"). *See generally* Motion; Plaintiff's Opposition to Attorneys' Eyes Only Confidentiality Designation ("Opposition") (ECF No. 29) at 4-6.

In support of their motion, the defendants provide the affidavit of Troy Ross, the Prison's Deputy Warden in charge of security, stating:

> 2. For many years, [DOC] policies concerning the use of force – including those governing the use of chemical agents and cell extractions – have been kept confidential from the prison population. These policies govern delicate circumstances where prisoners are noncompliant and/or pose a danger to themselves or those around them, and they are designed to promote the safety and security of prisoners and staff, and the maintenance of order in [DOC] facilities.
>
> 3. The confidentiality of these policies is essential to maintaining prison security, order, and discipline. If prisoners had access to these policies, they could forecast how corrections officers would respond in given circumstances, enabling them to frustrate legitimate penological efforts, and putting the lives of corrections officers at risk.
>
> 4. Training materials, including the cell extraction training unit at issue, are not released to prisoners for the same reason. The cell extraction training unit is based on the cell extraction policy, and it provides detailed descriptions of the circumstances justifying a cell extraction; the positioning and roles of corrections officers carrying out a cell extraction; and the steps officers take depending on the behavior of the subject prisoner. Prisoners could use any of this information to thwart a cell extraction, or to otherwise harm the corrections officers involved.
>
> 5. The confidentiality of the [2016 Sabre Manual] is important for similar reasons. The manual, which Sabre does not make public, sets forth instructions and guidelines on which [DOC] policy is based. For example, the manual describes how corrections officers employ chemical agents (e.g., minimum deployment distance, duration of spray, and positioning), and identifies the specifications of OC products used at the prison (e.g., capacity, propellant, and safety mechanisms). Any of this information could be used to undermine the efforts of correctional officers to use OC spray for legitimate penological purposes, or to place the officers employing those agents at risk of harm.
>
> 6. In my capacity as Deputy Warden, I have been privy to several instances in which prisoners have used information about how correctional officers are trained or directed to act in sensitive circumstances to (a) stage attacks on officers (e.g., by luring them into booby-trapped cells), or (b) frustrate attempts to secure compliance (e.g., by anticipating how officers will respond to particular conduct). Preventing the spread of this information is therefore paramount.
>
> 7. Unfortunately, when information of this nature becomes available, it is readily circulated among the prison population. If even one prisoner were to

learn the details of the prison's use of force policies, for example, that information would spread and the impact on the prison would multiply in kind.

> 8. The fact that the policies and training materials at issue are three years[] old does not reduce the risk posed by the release and spread of the information contained therein. While the use of force policies have changed since 2016, they remain sufficiently similar to the 2016 policies – e.g., with regard to the circumstances in which force may be used, and the steps involved in a cell extraction – that prisoners could use that information to hinder efforts to maintain prison safety and security and to put corrections officers in harm's way. It is for this reason, among others, that the [DOC] does not release outdated use of force policies.

Affidavit of Troy Ross ("Ross Aff."), Exh. B (ECF No. 28-2) to Motion, ¶¶ 2-8.

### III. Discussion

As the defendants note, *see* Motion at 3, courts have approved attorneys' eyes only designations as a means of balancing prison security concerns against an inmate's right of access to relevant discovery, *see, e.g., White v. Jindal*, Civil Action No. 13-CV-15073, 2015 WL 181670, at *8 (E.D. Mich. Jan. 14, 2015) (granting *pro se* inmate's motion to appoint counsel when his "discovery requests related to other inmates' disciplinary records raise[d] a delicate issue that pit[ted] security concerns against [his] right to discoverable information under the Federal Rules" and directing that those materials be produced to the plaintiff's counsel for attorneys' eyes only); *Ellis v. Navarro*, No. C 07-05126 SBA (LB), 2012 WL 1294205, at *1-2 (N.D. Cal. Apr. 16, 2012) (overruling agency's objection to the production of highly sensitive jail-investigation records; holding that release of summary reports of those records for plaintiff's attorneys' eyes only adequately addressed safety and security concerns); *compare, e.g., Williams v. Williams*, No. C 07-04464 CW (LB), 2011 WL 863500, at *3-4 (N.D. Cal. Mar. 10, 2011) (granting defendant prison guard's motion for protective order regarding production of sensitive prison documents, including use of force policy, to plaintiff inmate after defendant noted that plaintiff's *pro se* status "remove[d] the option of limiting disclosure to inmate's counsel to mitigate the security concern").

The plaintiff counters that the defendants fail to meet the "heightened burden" of an attorneys' eyes only designation, which requires "a heightened showing of need[.]" Opposition at 4. He argues that, in this case, "any remote risk of harm" from the disclosure of the 2016 materials to him is outweighed by his need to consult with his attorneys regarding these "crucially relevant case materials[.]" *Id*. Indeed, he asserts, the designation of these materials as for attorneys' eyes only "prevents counsel from satisfying basic ethical rules, like keeping the client apprised about the litigation, providing a complete and candid evaluation about the likelihood of success on the case, and freely consulting with the client about potential avenues for discovery." *Id*. at 4 & n.5 (citing Me. R. Prof. Conduct 1.4).

He posits that the defendants' interest in the secrecy of the 2016 policies and training materials is "low" because (i) those materials are outdated and have been superseded, *see id*. at 5 (citing *Poitras v. Dep't of Homeland Sec*., 303 F. Supp. 3d 136, 157 (D.D.C. 2018), for the proposition that "[l]aw enforcement interests in outdated materials stale over time"), (ii) the defendants' showing that the 2016 policies are sufficiently similar to the current ones is "fatally vague" and "fails to acknowledge that somebody viewing only the outdated policies has no way of knowing which provisions have been changed[,]" *id*., and (iii) the defendants rely on general security risks that assume all prisoners would have access to the policies and training materials without addressing the risk posed by sharing those documents with him, specifically, *see id*. at 4-5.

The plaintiff adds that the defendants' showing regarding the 2016 Sabre Manual is deficient because they articulate no specific risk of harm arising from sharing that document with him and concede that they originally opted not to designate it as for attorneys' eyes only. *See id.* at 6; *see also* Motion at 1 (acknowledging that defendants redesignated the 2016 Sabre Manual

5

from "Confidential – Subject to Protective Order" to "Confidential – Not to be disclosed to plaintiff" during the deposition of defendant Michael Burns and upon further review and consultation with Deputy Warden Ross).

The plaintiff, accordingly, argues that the materials at issue should be redesignated as confidential, but not for attorneys' eyes only. *See* Opposition at 3. In the alternative, he argues that the defendants' "blanket designation of hundreds of pages of materials is substantially overbroad," requesting that the court take a more balanced approach; for example, by permitting him to view the documents or conducting an *in camera* review to ensure that only particularly sensitive passages are redacted. *Id*. at 9-10. Finally, the plaintiff requests that his counsel be permitted "to at least discuss the general substance of the challenged materials with [him] to ensure his right to share in a very basic understanding of his claim and how the objected-to Attorneys-Eyes-Only documents will be employed to prove his claims." *Id*. at 9.

As the defendants rejoin, *see* Defendants' Reply Memorandum in Support of Motion To Retain Confidentiality Designations ("Reply") (ECF No. 36) at 1, they have no heightened burden. They must simply show good cause to retain the designations at issue. *See* Confidentiality Order ¶ 9(c). Their evidence meets that standard.

First, the defendants do not make a fatally vague showing that the 2016 policies and training materials are sufficiently similar to those currently in effect to implicate jail safety and security concerns. Deputy Warden Ross avers that those materials are sufficiently similar to current ones, for example, with respect to the circumstances in which force may be used and the steps involved in a cell extraction, that prisoners could use that information to hinder efforts to

maintain prison safety and security and to put corrections officers in harm's way. *See* Ross Aff. ¶ 8.[1]

Second, prisoners' unawareness of which aspects of a superseded policy have changed does not mitigate the risk of release of still-relevant information. As the defendants note, "if a prisoner is capable, with reasonable accuracy, [of] predict[ing] how an officer will act based on an outdated policy, he remains able to use that information to put prison staff in danger." Reply at 2.

Third, the defendants adequately address the risks of release of the materials at issue, including the 2016 Sabre Manual, to the plaintiff, by tendering evidence that information of this nature readily circulates among the prison population when it becomes available and that, if even one prisoner were to learn the details of the prison's use of force policies, that information would spread. *See* Ross Aff. ¶ 7.

Fourth, the fact that the defendants redesignated the 2016 Sabre Manual as for attorney's eyes only does not undermine their bid to retain that designation.[2] The defendants make an adequate showing that specific types of information contained therein could be used to undermine corrections officers' efforts to use chemical spray or place them at risk of harm. *See* Ross Aff. ¶ 5 (noting that 2016 Sabre Manual "describes how corrections officers employ chemical agents (e.g., minimum deployment distance, duration of spray, and positioning), and identifies the specifications of OC products used at the prison (e.g., capacity, propellant, and safety mechanisms)").

---

[1] Moreover, as the defendants argue, *see* Reply at 2, *Poitras*, the case that the plaintiff cites for the proposition that law enforcement interests in outdated materials stale over time, *see* Opposition at 5, is distinguishable, concerning a statutory Freedom of Information Act exemption that permits nondisclosure when the information at issue would interfere with pending or anticipated law enforcement proceedings, a concern that is inherently "temporal in nature," *Poitras*, 303 F. Supp. 3d at 157 (citation and internal quotation marks omitted). *Poitras*, hence, does not address the extent to which outdated prison policies are "stale" with respect to security and safety concerns.
[2] The plaintiff does not argue that the redesignation was untimely. *See* Opposition at 6.

Fifth, and finally, the balance of the parties' interests favors the grant of this motion. As discussed above, the defendants have produced evidence that the materials at issue contain sensitive information that could be used to thwart corrections officers' efforts to maintain security at the Prison and/or pose a risk to officer safety and that such information, if released to even one prisoner, would spread throughout the Prison. They, thus, have a strong interest in the designation of these documents as for attorneys' eyes only.

The plaintiff, on the other hand, has not demonstrated a compelling need to obtain or view these materials to participate meaningfully in his case. As the defendants observe, "[c]ounsel remains able to consult with [the plaintiff] about his recollection of what transpired, whether generally or through specific inquiries or reference to other discovery, and counsel can compare that account to the text of the 2016 policies and the guidance provided to officers in the produced training materials and manual." Motion at 6. Indeed, the defendants note that "counsel has already pursued extensive lines of questioning on these very topics in the depositions of Defendants Burns and [Kyle] Ruffner[,]" *id*., and the plaintiff "attended the lion's share" of those depositions "in person[,]" Reply at 3.

As the defendants argue, *see id*., the plaintiff need not have access to the Prison's policies and training guidelines or the chemical manufacturer's guidelines to understand and appreciate his counsel's assessments of his constitutional claims, and his lack of such access does not prevent his counsel from reasonably consulting with him and providing such assessment to the extent reasonably necessary, *see* Opposition at 4 n.5 (noting that, pursuant to Me. R. Prof. Conduct 1.4, a lawyer must "reasonably consult with the client about the means by which the client's objectives are to be accomplished" and "explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation").

To the extent that the plaintiff requests, in the alternative, that the court (i) permit him to view the materials at issue "for a temporary period," (ii) undertake an *in camera* review and order the disclosure of those materials with only "particularly sensitive information" redacted, and/or (iii) permit his counsel to discuss "the general substance" of the challenged materials with him, those requests are denied. *Id*. at 9. As discussed above, the defendants have shown good cause for the retention of the attorneys' eyes only designation, which strikes a reasonable balance between the parties' interests.

### IV. Conclusion

For the foregoing reasons, I **GRANT** the defendants' motion to retain the attorneys' eyes only designations of (i) 2016 DOC policies governing the use of force, including the use of chemical agents and cell extractions, (ii) 2016 DOC training materials on cell extraction procedures, (iii) the 2016 Sabre Manual, and (iv) portions of deposition transcripts discussing those documents.

### *NOTICE*

*In accordance with Federal Rule of Civil Procedure 72(a), a party may serve and file an objection to this order within fourteen (14) days after being served with a copy thereof.*

*Failure to file a timely objection shall constitute a waiver of the right to review by the district court and to any further appeal of this order.*

Dated this 25th day of October, 2019.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge